UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDWARD CARDOSO *and* JANE
CARDOSO,

                              Plaintiffs,

        v.

WELLS FARGO BANK, N.A. a/k/a WELLS
FARGO HOME MORTGAGE,

                              Defendant.

---

No. 21-CV-8189 (KMK)

OPINION & ORDER

Rick S. Cowle, Esq.
The Law Office of Rick S. Cowle
Carmel, NY
*Counsel for Plaintiffs*

Angela Smedley, Esq.
Sean Anderson, Esq.
Winston & Strawn LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Edward and Jane Cardoso ("Plaintiffs") bring this Action against Wells Fargo Bank, N.A.

("Wells Fargo" or "Defendant") alleging various tort claims arising out of Defendant's denial of

Plaintiffs' loan modification request and foreclosure of Plaintiffs' home mortgage.  (*See*

*generally* Compl. (Dkt. No. 1-1).)  Before the Court is Defendant's Motion to Dismiss pursuant

to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion").  (*See* Not. of Mot.

(Dkt. No. 22).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Complaint and are assumed to be true for

purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps.*

*Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

On April 10, 2009, Plaintiffs obtained a fixed rate mortgage loan from Wells Fargo for a

residential property located at 112 Wixon Pond Road, Mahopac, NY.  (*See* Compl. ¶ 4; *see also*

Dkt. No. 21-2 ("Mortgage Loan").)[1]  Plaintiffs lost their jobs and began to experience financial

---

[1] Defendant cites to several documents that were put before the Court by U.S. Bank in filing its motion to dismiss, (*see* Def.'s Mem. of Law in Supp. of Mot. to Dismiss 2–3 (Dkt. No. 23)), before U.S. Bank reached a settlement with Plaintiffs and was dismissed as a party.  *See infra*.  One such document is Plaintiffs' mortgage loan with Wells Fargo.

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56."  *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (similar).  "Moreover, 'where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.'"  *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 394 (S.D.N.Y. 2015) (alteration omitted) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("[T]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." (alterations and quotation marks omitted) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012))).  Given that this Action concerns allegations of wrongful conduct over the course of the attempted modification and foreclosure of Plaintiffs' mortgage loan and Plaintiffs do not appear to dispute the authenticity of the mortgage loan document provided by U.S. Bank and relied upon by Wells Fargo, (*see generally* Pls.' Mem. in Opp'n to Def.'s Mot. To Dismiss (Dkt. No. 31)), the Court finds Plaintiffs' mortgage loan to be integral to the Complaint.  *See Almazon v. JPMorgan Chase Bank, N.A.*, No. 19-CV-4871, 2020 WL 1151313, at *2 n.3 (S.D.N.Y. Mar. 9, 2020) ("The [c]ourt may consider [p]laintiff's publicly recorded mortgage documents in connection with [the] [d]efendant's motion because [the] [p]laintiff explicitly references them in her [c]omplaint, they are integral to her claims, and she raises no objections to their relevance or authenticity."); *Costigan v. CitiMortgage, Inc.*, No. 10-CV-8776, 2011 WL

problems in or around 2016, which led to Plaintiffs falling beyond on their mortgage payments. (*See* Compl. ¶ 5.)  As a result, in September 2016, Wells Fargo began foreclosure proceedings in the New York Supreme Court for Putnam County.  (*See* Dkt. No. 21-3 (Foreclosure Docket).)[2] Plaintiffs allege that during the pendency of the foreclosure proceedings, Plaintiffs pursued multiple avenues for loan modification so that they could maintain possession of their home. (*See* Compl. ¶¶ 7–14.)  However, Plaintiffs allege that Wells Fargo—and later, U.S. Bank, as Trustee for the RMAC Trust, Series 2016-CIT ("U.S. Bank"), to which Wells Fargo assigned Plaintiffs' mortgage loan on February 17, 2017, (*see* Dkt. No. 21-4 (Assignment of Mortgage))[3]—denied Plaintiffs' sought modifications, (*see* Compl. ¶¶ 11–14).  On July 2, 2018, a default judgment was entered against Plaintiffs in the foreclosure action, which was upheld on appeal, and on March 20, 2019, U.S. Bank acquired Plaintiffs' home after a foreclosure sale. (*See* Dkt. Nos. 21-5, 21-6.)[4]  U.S. Bank took title to Plaintiffs' home in December 2019.  (*See* Compl. ¶ 19.)

---

3370397, at *1–3 & n.5 (S.D.N.Y. Aug. 1, 2011) (finding, in an action involving various state tort law claims in connection with the attempted modification and foreclosure of a residential mortgage loan, that "[a]lthough . . . [the] plaintiff's original mortgage documents were not attached to the [c]pmplaint, the [c]ourt may consider these documents because the [c]omplaint relies heavily on their terms and effects, rendering these documents integral to the [c]omplaint" (alteration and quotation marks omitted)). The Court will therefore consider this document in ruling on Defendant's Motion.

[2] "Courts may take judicial notice of public documents and matters of public record," *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018), including "document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quotation marks omitted).  The Court will therefore consider the fact that foreclosure proceedings took place in the New York Supreme Court for Putnam County and the fact that certain documents were filed in conjunction with those proceedings as judicially noticeable.

[3] *See supra* Note 1.

[4] *See supra* Note 2.

Plaintiffs allege that as a result of the foreclosure and loss of their home, "Plaintiffs were devastated, embarrassed, and emotionally bankrupt" and "humiliated that their neighbors knew they were foreclosed upon." (*Id.* ¶ 21.) Plaintiffs also allege that they "experienced marital problems as a result of the stress of the foreclosure, the forced move, and the impact upon their lives," and "began to see a psychiatrist for treatment of depression and emotional issues caused by [Defendant's] actions." (*Id.* ¶¶ 22–23.)

On or about April 21, 2021, Plaintiffs received a letter from Wells Fargo, which stated:

> During a review of your account history, we found that a faulty calculation was used when we considered your eligibility for a trial payment plan that may have resulted in a loan modification. Because of the faulty calculation, we didn't offer the trial payment plan. We apologize if this error caused any negative impact. We've carefully considered what we can do for you. You'll find a payment enclosed to help make up for any financial loss that may have resulted from this error. Cashing this check will not waive or release any rights you have, nor will it obligate you to do anything. You retain the right to pursue all other applicable remedies. You also retain the option to elect mediation.

(*Id.* ¶ 25.) The letter enclosed a check for $15,000. (*See id.*) Plaintiffs received a second letter on April 30, 2021, reminding Plaintiffs of their option to participate in mediation. (*See id.* ¶ 26.)

Plaintiffs allege that the faulty calculation referenced in Wells Fargo's letter was due to "software issues that [Wells Fargo] failed to fix for five to eight years," "even though the government had already cited [Wells Fargo] for failing to adequately audit its modification and foreclosure procedures." (*Id.* ¶¶ 29–30; *see also id.* ¶¶ 32–39.) Plaintiffs allege that "[t]his outrageous conduct by [Wells Fargo] was a violation of numerous government statutes and requirements such as the [Home Affordable Modification Program ('HAMP')]." (*Id.* ¶ 34.) And, "[a]s a result of [Wells Fargo's] actions, the Plaintiffs lost their home, lost over $100,000.00 in equity in their home, and have suffered embarrassment and humiliation, and experienced marital problems." (*Id.* ¶ 40.)

4

B. <u>Procedural History</u>

Plaintiffs filed their Complaint in New York Supreme Court for the County of Putnam on

August 12, 2021, bringing claims against both Wells Fargo and U.S. Bank.  (*See* Compl.)  On

October 4, 2021, Wells Fargo removed the Action to this Court on the basis of this Court's

diversity jurisdiction under 28 U.S.C. § 1332; U.S. Bank consented to the removal on

October 11, 2021.  (*See* Not. of Removal (Dkt. No. 1); Consent to Removal (Dkt. No. 9).)  On

October 8, 2021, U.S. Bank filed a pre-motion letter in anticipation of filing a motion to dismiss.

(*See* Dkt. No. 8.)  After receiving a response from Plaintiffs, (*see* Dkt. No. 12), the Court set and

held a pre-motion conference at which the Court adopted a briefing schedule, (*see* Dkt. Nos. 13,

15; *see also* Dkt. (minute entry for Nov. 9, 2021)).  U.S. Bank filed its motion to dismiss on

December 17, 2021, (*see* Not. of Mot. (Dkt. No. 19); U.S. Bank's Mem. of Law in Supp. of Mot.

(Dkt. No. 20); Decl. of John E. Brigandi, Esq. in Supp. of U.S. Bank's Mot. (Dkt. No. 21)), but

on January 11, 2022, Plaintiffs notified the Court that Plaintiffs and U.S. Bank had reached a

settlement, (*see* Dkt. No. 24).  Plaintiffs filed a stipulation of voluntary dismissal of their claims

against U.S. Bank on February 8, 2022, (*see* Dkt. No. 29), which the Court entered on

February 9, 2022, (*see* Dkt. No. 30).

Meanwhile, on November 12, 2021, Wells Fargo filed a pre-motion letter in anticipation

of filing a motion to dismiss.  (*See* Dkt. No. 16.)  On December 1, 2021, the Court set a briefing

schedule.  (*See* Dkt. No. 18.)  Wells Fargo filed its Motion on January 10, 2022.  (*See* Not. of

Mot. (Dkt. No. 22); Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 23).)

Plaintiffs filed their Opposition on February 10, 2022, (*see* Pls.' Mem. of Law in Opp'n to Mot.

("Pls.' Mem.") (Dkt. No. 31)), and Defendant filed its Reply on February 24, 2022, (*see* Def.'s

Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 32)).

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," *id.* (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue," *id.* (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir.2009)).  In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor.  *Id.* at 57.  However,

where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *See Carter*, 822 F.3d at 57.

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer

7

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation

omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79.  ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 94

(citation omitted).  Additionally, "when ruling on [a] Rule 12(b)(6) motion[] to dismiss," district

courts are directed to confine their consideration to "the complaint in its entirety, . . . documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice."  *Bellin*, 6 F.4th at 473 (quotation marks omitted); *see also Dashnau v. Unilever Mfg.

(US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B.  Analysis

Plaintiffs bring six causes of action against Defendant for the conduct described above:

(1) negligence, (*see* Compl. ¶¶ 43–50); (2) negligence per se, (*see id.* ¶¶ 51–60); (3) negligent

infliction of emotional distress, (*see id.* ¶¶ 61–71); (4) equitable relief, (*see id.* ¶¶ 72–89);

(5) violation of New York General Business Law ("GBL") § 349, (*see id.* ¶¶ 90–103); and

(6) intentional infliction of emotional distress, (*see id.* ¶¶ 104–20).  Plaintiffs seek damages

and—via their cause of action for "equitable relief"—the transfer of the deed of the subject

property back to Plaintiffs.  (*See id.* at 17–20.)  Defendant argues that the Complaint must be

dismissed in its entirety because (1) Plaintiffs' claims are based on purported violations of

HAMP, which does not provide a private right of action, (*see* Def.'s Mem. 5–6); (2) Plaintiffs

have failed to adequately allege causation on any of their tort law claims because Plaintiffs'

damages were the result of Plaintiffs' failure to defend the foreclosure action, (*see id.* at 7–9); and (3) in any event, Plaintiffs have failed to adequately plead the other elements of their tort law claims, (*see id.* at 10–20).

The Court will address these arguments to the extent necessary to resolve the instant Motion.

### 1. Failure to State a Claim

#### a. Plaintiffs' Negligence Claim

"To state a claim for negligence under New York law, one must allege, inter alia, that the defendant owed a duty of care to the plaintiff." *R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 516 (2d Cir. 2020) (italics omitted) (citing, inter alia, *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 289 (N.Y. 2001)); *see also Edrei v. City of New York*, 254 F. Supp. 3d 565, 582 (S.D.N.Y. 2017) ("To state a claim for negligence, under New York [l]aw a plaintiff must [allege]: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'" (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002))), *aff'd*, 892 F.3d 525 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 2614 (2019).  Defendant argues that Plaintiffs' claim for negligence fails as a matter of law "because Wells Fargo owed them no legally cognizable duty."  (Def.'s Mem. 10.)

"[I]t is 'well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties.'"  *Miyamoto v. Bank of Am., N.A.*, No. 19-CV-445, 2020 WL 5577730, at *3 (E.D.N.Y. Sept. 17, 2020) (quoting *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013)); *see also Bell v. Deutsche Bank*, No. 18-CV-1593, 2019 WL 4917901, at *7 (E.D.N.Y. Sept. 30, 2019) ("Moreover, Deutsche Bank, as a mortgage servicer, owes no duty of care to plaintiffs, the

borrowers." (collecting cases)).  And, as Defendant points out, "there is no duty on the part of a bank to grant or process loan applications, including under HAMP."  (Def.'s Mem. 10 (citing, inter alia, *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 800 (S.D.N.Y. 2011)).)  This lack of duty owed by Defendant to Plaintiffs is fatal to Plaintiffs' negligence claim.

The cases Plaintiffs cite in opposition do not change the Court's conclusion.  (*See* Pls.' Mem. 8–9.)  *Picini v. Chase Home Finance LLC* does not concern a claim for negligence; rather, *Picini* concerns a claim for negligent misrepresentation, for which the relevant element is "the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information the plaintiff."  854 F. Supp. 2d 266, 276 (E.D.N.Y. 2012).  But even setting that aside, the court in *Picini* confirmed that "a typical borrower-lender relationship *will not* support a negligent misrepresentation claim" and only found that the plaintiffs had alleged the existence of a "special or privity-like relationship" because their relationship with their lender was atypical.  *Id.* at 266–277 (emphasis added).  Namely, the plaintiffs had alleged that "[the] [d]efendants assigned them a manager from the 'Chase Resolutions Group' to help guide them through the loan modification process . . . , and that a series of [the] [d]efendants' representatives—under the guise of resolving [the] [p]laintiffs' situation—provided them with conflicting information."  *Id.* at 277.  No such allegations are made here.  (*See generally* Compl.)

The same holds true for *Fleet Bank v. Pine Knoll Corp.* and *Smith v. Ameriquest Mortgage Co.*, in which the court also examined claims for negligent misrepresentation rather than ordinary negligence, and found that the relationships between the plaintiffs and their respective lenders were atypical.  *See Fleet Bank v. Pine Knoll Corp.*, 736 N.Y.S.2d 737, 741 (App. Div. 2002); *see also Smith v. Ameriquest Mortg. Co.*, 876 N.Y.S.2d 447, 450 (App. Div. 2009).  Namely, in *Fleet Bank*, the court found that the plaintiffs had "rel[ied] heavily upon [the

defendant's] relationship managers to provide them with . . . financial solutions," 736 N.Y.S.3d at 742, and in *Smith*, the court found that a representative of the defendant had "personally solicited the plaintiff to refinance her mortgage with [the defendant], and came to her home twice to provide her with information about the transaction in an effort to convince her that the transaction was in her best interests," 876 N.Y.S.2d at 450.  Again, here, all Plaintiffs have alleged is that "Defendant[s] had a duty to review the Plaintiffs' loan modification application, financial documents[,] and calculations precisely, cautiously, and with accuracy," (Compl. ¶ 44), which—simply put—is not accurate as a matter of law.[5]  Plaintiffs' remaining cases are entirely irrelevant because they examine California and Hawaii tort law rather than New York tort law. *See Gray v. OneWest Bank*, No. 13-CV-547, 2014 WL 3899548 (D. Haw. Aug. 11, 2014); *Garcia v. Ocwen Loan Servicing, LLC*, No. 10-CV-290, 2010 WL 1881098 (N.D. Cal. May 10, 2010); *Rossetta v. CitiMortgage, Inc.*, 18 Cal. App. 5th 628 (Ct. App. 2017); *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (Ct. App. 2014); *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872 (Ct. App. 2013).

Accordingly, Plaintiffs' claim for negligence is dismissed.

---

[5] Plaintiffs argue in opposition that "Plaintiffs have alleged that Wells Fargo had 'sophisticated understanding of servicing mortgage loans and of available loss mitigation options' that rises to the level of a special duty and therefore, the Plaintiffs adequately pled a negligence claim." (Pls.' Mem. 9.)  Even if it were correct that pleading in a conclusory fashion that a lender-defendant had a "sophisticated understanding of servicing mortgage loans and of available loss mitigation options" was sufficient to plead the existence of a duty under these circumstances—of which the Court is not at all convinced—this allegation is entirely absent from the Complaint.  (*See generally* Compl.)  Rather, Plaintiffs have simply selectively quoted from *Picini*—which this Court has already explained is inapposite—and invited the Court to infer that Plaintiffs' allegation that Defendant owns propriety software is really an allegation that Defendant possesses such a "sophisticated" understanding to impose a duty that otherwise would indisputably not exist.  (*See* Pls.' Mem. 9.)  But "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 453 n.11 (S.D.N.Y. Sept. 30, 2021) (quotation marks omitted).

b.  Plaintiffs' Negligence Per Se Claim

"Under New York law, 'violation of a State statute that imposes a specific duty

constitutes negligence per se, or may even create absolute liability.'"  *In re Sept. 11 Prop.*

*Damage & Bus. Loss Litig.*, 468 F. Supp. 2d 508, 522 (S.D.N.Y. 2006) (quoting *Elliott v. City of*

*New York*, 747 N.E.2d 760, 762 (N.Y. 2001)); *see also Chen v. United States*, 854 F.2d 622, 627

(2d Cir. 1988) ("In New York, the 'unexcused omission' or violation of a duty imposed by

statute for the benefit of a particular class '*is* negligence itself.'" (quoting *Martin v. Herzog*, 126

N.E. 814 (1920))).  Therefore, to state a claim for negligence per se, a plaintiff must allege the

violation of a New York state statute as a prerequisite.  *See Timperio v. Bronx-Lebanon Hosp.*

*Ctr.*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (noting that "a finding of negligence per se" is

"for a statutory violation" (underlining and quotation marks omitted) (quoting *German ex rel.*

*German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995))).

Defendant argues that Plaintiffs have failed to state a claim for negligence per se because

they have failed to sufficiently allege any such predicate statutory violation by vaguely alleging

that "[t]he aforesaid was a violation of, inter alia, HAMP, GBL, RESPA, and FTC statutes."

(Def.'s Mem. 11–13; Compl. ¶ 56 (italics omitted).)  In opposition, Plaintiffs do not dispute that

their Complaint is deficient, arguing that they are basing their cause of action on CPLR 3408,

which "Plaintiff[s] recognize . . . was not specifically addressed in the Complaint."  (Pls.'

Mem. 10–11.)  The Court therefore agrees with the Parties that Plaintiffs have failed to state a

claim for negligence per se, and this claim is dismissed.[6]

---

[6] While this claim is dismissed without prejudice, *see infra*, the Court shares Defendant's
skepticism that a claim for negligence per se under New York law could be based on an alleged
violation of the CPLR, which is New York's version of the Federal Rules of Civil Procedure and
clearly not enacted for the benefit of a particular class.  (*See* Def.'s Reply Mem. 6.)  *See Timperio*,
384 F. Supp. 3d at 434–35 (explaining that the first of "[t]hree factors [which] are of central

<u>c.  Plaintiffs' Negligent Infliction of Emotional Distress Claim</u>

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (en banc) (collecting cases).  "As fleshed out by New York caselaw, the latter element—guarantees of genuineness—generally requires a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress, 'such as the mishandling of a corpse or the transmission of false information that a parent or child had died.'" *J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017) (quoting *Taggart v. Costabile*, 14 N.Y.S.3d 388, 396 (App. Div. 2015)).  "Otherwise, the 'guarantees of genuineness' element 'generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety.'" *Id.*; *see also Francis*, 992 F.3d at 81 n.57 ("To establish the fourth element, the plaintiff generally must plead that the breach endangered his physical safety or caused him to fear for his physical safety."); *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 646 (E.D.N.Y. 2013) ("[T]o succeed on a claim based on an injury of purely emotional harm, a plaintiff must premise her cause of action 'upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety.'"  (quoting *Romero v. City of New York*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012))); *Fisk v. Letterman*, 424 F. Supp. 2d 670, 676 (S.D.N.Y. 2006) ("In order to state a claim for negligent infliction of emotional distress, a plaintiff must allege that she was

---

importance" in determining whether a finding of negligence per se is warranted is "whether the plaintiff is one of the class for whose benefit the statute was enacted").

owed a duty, that the defendant breached the duty, and that the plaintiff suffered emotional injury as a result.  In addition, the defendant's conduct must have unreasonably endangered the plaintiff's physical safety."  (citing *Green v. Leibowitz*, 500 N.Y.S.2d 146, 148 (App. Div. 1986))).

Defendant argues that Plaintiffs' claim for negligent infliction of emotional distress fails because Plaintiffs have failed to allege either that Defendant owed them a duty or, setting aside this deficiency, that any conduct by Defendant even approached the standard required for such a claim.  (*See* Def.'s Mem. 13–15.)  The Court agrees entirely.  As the Court has already explained, Plaintiffs have failed to allege that Defendant owed them any duty because Plaintiffs have alleged only a typical borrower-lender relationship, for which no duty of care attaches.  *See supra* II.B.1.a.  Moreover, while the Court is sympathetic to the fact that Defendant's refusal to modify and foreclosure of Plaintiffs' mortgage loan caused Plaintiffs to experience emotional distress in a colloquial sense, which was understandably exacerbated by the receipt of the letter from Defendant, it is clear that none of Defendant's alleged conduct comes close to "the mishandling of a corpse," "the transmission of false information that a parent or child had died," "endanger[ing] [Plaintiffs'] safety," or "caus[ing] [Plaintiffs] to fear for [their] physical safety." *J.H.*, 248 F. Supp. 3d at 416 (quotation marks omitted); *see also Pirrelli v. OCWEN Loan Servicing, LLC*, 12 N.Y.S.3d 110, 114 (App. Div. 2015) (finding that the plaintiffs had failed to state a claim for negligent infliction of emotional distress against mortgage lender-defendants where "the plaintiffs did not allege that their physical safety was endangered or that they were caused to fear for their physical safety, which is generally an element of a cause of action based on negligent infliction of emotional distress" (quotation marks omitted)).

Accordingly, Plaintiffs' claim for negligent infliction of emotional distress is dismissed.

d.  Plaintiffs' Intentional Infliction of Emotional Distress Claim

To state a claim for intentional infliction of emotional distress in New York, a plaintiff must allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983)); *accord Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (same).  The New York Court of Appeals has observed that "the requirements of [an intentional infliction of emotional distress claim] are rigorous, and difficult to satisfy" and that because of this, "of the intentional infliction of emotional distress claims considered by [the New York Court of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous."  *Howell*, 612 N.E.2d at 702; *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (explaining that intentional infliction of emotional distress "remains a highly disfavored tort under New York law" and "is to be invoked only as a last resort" (quotation marks omitted)).

"The Second Circuit has suggested that sufficient . . . outrageous behavior could be 'some combination' of alleged 'public humiliation, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy' with false accusations of criminal conduct."  *Truman v. Brown*, 434 F. Supp. 3d 100, 120 (S.D.N.Y. 2020) (quoting *Stuto*, 164 F.3d at 828–29); *see also Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 180 (E.D.N.Y. 2017) (same).  Alleging sufficiently "outrageous" conduct is thus a very high bar. *See, e.g.*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 375 (S.D.N.Y. 2016) ("[E]ven a

15

false charge of sexual harassment does not rise to the level of outrage required under New York law." (quotation marks omitted)); *Palmer v. City of New York*, 564 F. Supp. 3d 221, 239 (E.D.N.Y. 2001) (finding that the complaint failed to state a claim for intentional infliction of emotional distress where the complaint alleged "that the defendant police officers came to [the] plaintiffs' home [to evict the plaintiffs], were shown a copy of the state court's [order staying the eviction order] and bankruptcy court filings, ignored [the] plaintiffs' pleas to stay in their home, arrested [the plaintiff] in front of the neighbors, and 'coerced' [one plaintiff] into telling [the other plaintiff] to leave the home").

Defendant argues that Plaintiffs have failed to adequately allege any element of their intentional infliction of emotional distress claim. (*See* Def.'s Mem. 19–20.) The Court need not examine each element of Plaintiffs' intentional infliction of emotional distress claim, because the Court finds that Plaintiffs have failed to allege that Defendant engaged in any sufficiently outrageous conduct, which is fatal to their claim. Plaintiffs' claim ultimately boils down to the following: (1) Defendant made use of faulty propriety software to determine if its borrowers qualified for modifications of their mortgage loans; (2) Defendant knew or should have known that the propriety software was faulty, because they had allegedly been put on notice of that fact via a "government . . . cit[ation]"; (3) Defendant used its faulty software to determine if Plaintiffs were eligible for a modification and determined that Plaintiffs were not eligible for a modification, which led to Defendant foreclosing on Plaintiffs' mortgage; and (4) had Defendant not used its faulty software, Defendant would have found Plaintiffs to be eligible for a modification, and Plaintiffs could have avoided foreclosure. (*See generally* Compl.) But courts have held that "[d]ebt collection or foreclosure—*even when initiated improperly*—will typically support an [intentional infliction of emotional distress claim] *only if* accompanied by other

16

'loathsome conduct,'" such as "[i]n the context of debt collection . . . the aggressive pursuit of the debt using techniques that are intended or likely to cause physical illness." *Calizaire v. Mortg. Elec. Reg. Sys., Inc.*, No. 14-CV-1542, 2017 WL 895741, at *8 (E.D.N.Y. Mar. 6, 2017) (emphases added) (citations omitted), *aff'd*, 763 F. App'x 124 (2d Cir. 2019).  Plaintiffs have alleged no such other "loathsome conduct" sufficient to support a claim for intentional infliction of emotional distress.  *See id.* ("[The plaintiff's] complaint, in essence, is that [the defendant] has knowingly initiated foreclosure proceedings without the right to do so.  This does not constitute the 'outrageous conduct' necessary to support an [intentional infliction of emotional distress] claim."); *see also Oparaji v. ABM AMRO Mortg. Grp., Inc.*, No. 19-CV-1650, 2020 WL 9816011, at *12 (E.D.N.Y. Sept. 18, 2020) ("[The] [p]laintiff's allegations that [the] [d]efendants were withholding her monthly payments, called her late at night, initiated foreclosure proceedings, misrepresented her monthly payment amounts, failed to remove negative credit information from her credit report, and forged the 2004 mortgage and note do not constitute conduct [sufficient to support a claim for intentional infliction of emotional distress]."); *cf. Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 270 (E.D.N.Y. 2009) ("Even construing the facts most favorably to [the] plaintiffs, based upon [the] defendants' alleged conduct in failing to provide the requested [housing] accommodations and bringing retaliatory eviction proceedings, the [c]ourt concludes that the [intentional infliction of emotional distress] claim must be dismissed based upon the current complaint for failure to allege any specific conduct so outrageous in character and so extreme in degree to go beyond all possible bounds of decency.").[7]

---

[7] Plaintiffs' citation in opposition to one single case interpreting California tort law is unpersuasive.  (*See* Pls.' Mem. 17–21 (citing *Hernandez v. Wells Fargo & Co.*, No. 18-CV-7354, 2019 WL 2359198, at *6 (N.D. Cal. June 3, 2019)).)

Accordingly, Plaintiffs' claim for intentional infliction of emotional distress is dismissed.

### e.  Plaintiffs' GBL § 349 Claim

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business[,] trade, or commerce." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alteration omitted) (quoting N.Y. G.B.L. § 349).  "To successfully assert a claim under [this] section"—which is most frequently deployed to bring false advertising claims—"'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  *Id.* at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (same); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).  Defendant argues that Plaintiffs' § 349 claim fails because Plaintiffs have failed to adequately allege either that Defendant's conduct was deceptive or that Plaintiffs suffered actual injury resulting from Defendant's conduct.  (*See* Def.'s Mem. 17–18.)  The Court agrees that Plaintiffs' § 349 claim fails for failure to allege deceptive conduct, and thus need not address whether Plaintiffs have adequately alleged actual injury.

Plaintiffs' § 349 theory appears to be that Defendant's continued use of software that Defendant knew or should have known was faulty "was deceptive, misleading[,] and fraudulent to . . . Plaintiffs as well as to consumers at large who falsely believed that they were being properly evaluated for loan modifications which caused them to be wrongly denied."  (Compl. ¶ 98.)  But in making this allegation, Plaintiffs have failed to identify any statement, representation, or omission by Defendant that was allegedly deceptive.  *See Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (dismissing GBL § 349 claim where "[the] plaintiff makes no reference to the specific acts, representations[,] and/or omissions that she

18

claims are deceptive nor does she allege why these acts were deceptive" (quotation marks omitted)); *cf. St. Louis v. Selene Fin., L.P.*, No. 18-CV-6182, 2020 WL 956843, at *4 (E.D.N.Y. Feb. 27, 2020) (dismissing GBL § 349 claim based on notices that the plaintiff allegedly received from the defendant "that purported to offer loan modification options" where the complaint "lacks any assertion regarding *what* representation in the notices was deceptive" (quotation marks omitted)).  Notably, Plaintiffs make no effort to point the Court to any such alleged statement, representation, or omission in their opposition, instead simply repeating their theory of the case, that "Wells Fargo's conduct includes years of bad faith and gross negligence, coupled with egregious refusals by the company to remedy a known problem despite multiple government orders requiring it to do so."  (Pls.' Mem. 14–15.)  Rather, the Court finds that Plaintiffs have simply attempted to save their legally deficient tort claims by repackaging them as a statutory claim.  This is insufficient to save Plaintiffs' § 349 claim from dismissal.  *See also Seller v. Citimortgage, Inc.*, 988 N.Y.S.2d 32, 34 (App. Div. 2014) (finding that allegation that "[the] defendant violated [GBL] § 349 in connection with its processing of plaintiffs' application for a permanent loan modification under [HAMP]" was "an impermissible 'end run' around the absence of a private right of action under HAMP").

Accordingly, Plaintiffs' GBL § 349 claim is dismissed.

### 2.  Plaintiffs' Claim for Equitable Relief

Finally, Defendant argues that Plaintiffs' claim for equitable relief in the form of a transfer of the deed to the subject property back to Plaintiffs as "the true beneficial owner[s]," (Compl. ¶¶ 80–83), is barred under the *Rooker-Feldman* doctrine, (*see* Def.'s Mem. 16–17). Defendant separately argues that this claim must be dismissed because "a request for equitable relief is not cognizable as a stand-alone claim."  (*Id.* at 17.)  Plaintiffs do not respond to these arguments in opposition, (*see generally* Pls.' Mem.), and accordingly, these claims are dismissed

as abandoned.  *See Robinson v. Am. Int'l Grp., Inc.*, No. 08-CV-1724, 2009 WL 3154312, at *4 & n.65 (S.D.N.Y. Sept. 30, 2009) (holding that where "[the] [p]laintiff has failed to address [the] defendants' arguments against or even mention several of [her] claims," "[s]he therefore has abandoned these claims" (collecting cases)); *see also Scott v. JPMorgan Chase & Co.*, No. 13-CV-646, 2014 WL 338753, at *2 (S.D.N.Y. Jan. 30, 2014) ("[The] [p]laintiff's opposing [m]emorandum of [l]aw does not respond to this argument, and effectively concedes these arguments by his failure to respond to them." (citation omitted)).

### 3.  Other Issues

Given the Court's conclusion that each of Plaintiffs' claims is subject to dismissal for separate and independent reasons, the Court need not address Defendant's arguments that (1) Plaintiffs' claims are subject to dismissal as based on purported violations of HAMP, which does not provide a private right of action, (*see* Def.'s Mem. 5–6), and (2) Plaintiffs' tort law claims are subject to dismissal for failure to adequately allege causation, (*see id.* at 7–9).

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted.  The Clerk of Court is directed to terminate the pending motion.  (*See* Dkt. No. 22.)

Because this is the first adjudication of Plaintiffs' claims on the merits, the dismissal is without prejudice.  To the extent Plaintiffs have a good faith basis for filing an amended complaint, they must do so within 30 days of the date of this Opinion & Order.  If Plaintiffs fail to abide by the 30-day deadline, this Action may be dismissed with prejudice.

SO ORDERED.

Dated:    September 20, 2022
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge